IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CR-436-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| LUIS ALBERTO RENDON-ROMERO, ) | |
| ) | |
| Defendant. ) | |

On July 10, 2024, the United States of America ("United States" or "government") asked the court to order the Bureau of Prisons ("BOP") to perform a risk assessment of Luis Alberto Rendon-Romero ("Rendon-Romero" or "defendant") to determine if his release would create a substantial risk of bodily injury to another person or serious damage to property of another under 18 U.S.C. § 4246 [D.E. 76]. On July 21, 2024, Rendon-Romero responded in opposition [D.E. 79]. On July 23, 2024, Rendon-Romero moved for release from custody [D.E. 80].

On July 24, 2024, the court held a competency hearing, discussed the uncontested findings of Dr. Sarah Burton that Rendon-Romero was not competent and not restorable, and heard argument from the parties concerning their respective motions [D.E. 81]. On July 31, 2024, the government responded in opposition to Rendon-Romero's motion for release and renewed its request for the court to find that Rendon-Romero is now subject to the provisions of 18 U.S.C. § 4246 [D.E. 82]. On the same day, the government moved to dismiss the indictment "solely for reasons related to the mental condition of the [defendant]." [D.E. 83] 1; see 18 U.S.C. §§ 4241(d), 4246.

As explained below, the court accepts the uncontested findings of Dr. Burton and finds Rendon-Romero not competent to proceed and unlikely to be restored to competency. The court

grants the government's motion for a risk assessment and allows the Attorney General to maintain custody over Rendon-Romero under 18 U.S.C. § 4241(d)(2)(B) for an additional 30-day period to allow the BOP to conduct a risk assessment, after which time the court anticipates disposing of the pending criminal charges against Rendon-Romero according to law. The court denies without prejudice defendant's motion for release as premature.

I.

On November 24, 2021, the United States filed a criminal complaint against Rendon-Romero for illegal reentry by an alien in violation of 8 U.S.C. § 1326(a), (b)(1) [D.E. 1]. On December 7, 2021, a grand jury indicted Rendon-Romero on one count of illegal reentry by an alien in violation of 8 U.S.C. § 1326(a), (b)(1) [D.E. 9]. On February 10, 2022, Magistrate Judge Robert T. Numbers, II found Rendon-Romero competent to proceed, and Rendon-Romero pleaded guilty without a written plea agreement [D.E. 16].

On May 9, 2022, Rendon-Romero moved for a competency evaluation and for a psychiatric or psychological evaluation under 18 U.S.C. § 4241(a), (b) [D.E. 23]. On May 17, 2022, the court granted the motion and ordered that the United States conduct a psychiatric or psychological examination under 18 U.S.C. § 4247(b) [D.E. 24]. On September 26, 2022, Dr. David Szyhowski submitted his forensic report with his diagnosis of Rendon-Romero, determined that Rendon-Romero was not competent to proceed, and recommended a course of treatment in a competency restoration program [D.E. 25]. On November 2, 2022, Rendon-Romero filed a consent motion for treatment to restore competency [D.E. 26]. On December 21, 2022, the court granted Rendon-Romero's motion and ordered Rendon-Romero committed to the custody of the Attorney General for treatment in a competency restoration program under 18 U.S.C. § 4241(d) [D.E. 27]. On

2

January 19, 2023, the BOP designated Rendon-Romero to the Medical Center for Federal Prisoners in Springfield, Missouri, with a projected admission date of December 2023. See [D.E. 28] 3.

On February 1, 2023, Rendon-Romero moved for the court to require the Attorney General to determine competency within four months of the court's commitment order or to begin competency restoration treatment within three months of that order. See [D.E. 28]. On February 15, 2023, the government responded and informed the court about the BOP's issue securing a hospital bed for Rendon-Romero [D.E. 33]. On February 27, 2023, the court ordered the Attorney General to admit Rendon-Romero for competency restoration treatment on or before June 26, 2023 [D.E. 37].

On March 7, 2023, Rendon-Romero moved to withdraw his guilty plea [D.E. 38]. On March 8, 2023, Rendon-Romero filed an interlocutory appeal of the court's February 27, 2023 order and argued that failing to set a date certain within four months of the court's December 2023 commitment order was a constructive denial of Rendon-Romero's motion to require the Attorney General to determine competency within four months of the court's December 21, 2022 commitment order or to begin competency restoration within three months of that order [D.E. 41]. On May 31, 2023, the United States Court of Appeals for the Fourth Circuit affirmed this court's order [D.E. 48, 49]. See United States v. Rendon-Romero, No. 23-4164, 2023 WL 3734976, at *1 (4th Cir. May 31, 2023) (per curiam) (unpublished). On June 20, 2023, the government informed the court that the BOP could not admit Rendon-Romero for competency restoration treatment by June 26, 2023 [D.E. 52] and submitted an affidavit from the BOP's Chief of Psychological Evaluations explaining why [D.E. 52-1].

On June 29, 2023, Rendon-Romero moved to dismiss the indictment [D.E. 54]. On July 13, 2023, the government responded in opposition [D.E. 55]. On July 19, 2023, Rendon-Romero

3

replied [D.E. 56]. On July 28, 2023, the government informed the court that the BOP admitted Rendon-Romero to the Medical Center for Federal Prisoners in Springfield, Missouri, on July 27, 2023 [D.E. 57]. See [D.E. 70, 72].

On September 18, 2023, the court held a hearing on Rendon-Romero's motions to withdraw his guilty plea and to dismiss the indictment [D.E. 63]. At the hearing, the court denied Rendon-Romero's motion to withdraw his guilty plea, held open Rendon-Romero's motion to dismiss the indictment, and directed the parties to (1) submit any treatment notes to date and (2) update the court on the practical consequences for Rendon-Romero's treatment and custody status if the court dismissed the indictment or found Rendon-Romero not competent to proceed. See id.

On September 21, 2023, the government submitted Rendon-Romero's BOP health services clinical encounter documents [D.E. 64] and moved to seal those documents [D.E. 65]. The same day, the government informed the court that clinical evaluators could not yet determine the probability that Rendon-Romero would regain competency and that the government was communicating with Immigration and Customs Enforcement ("ICE") to determine the practical consequences of Rendon-Romero's potential release [D.E. 66]. On November 27, 2023, the government informed the court that Rendon-Romero's competency restoration treatment team would soon ask the court for an extension of Rendon-Romero's competency restoration treatment period because there was a substantial possibility that Rendon-Romero may become competent with additional restoration treatment [D.E. 67]. On December 14, 2023, the Warden of Rendon-Romero's treatment facility submitted a forensic report from Dr. Sarah Burton and requested a 120-day extension of Rendon-Romero's commitment for competency restoration treatment under 18 U.S.C. § 4241(d)(2)(A) [D.E. 70, 70-1]. On January 10, 2024, the court granted that request

4

and extended the period of Rendon-Romero's competency restoration treatment until May 8, 2024 [D.E. 71].

On June 26, 2024, the court received Dr. Sarah Burton's forensic psychological report of May 28, 2024. See [D.E. 72]. Dr. Burton opined that Rendon-Romero "remains incompetent to proceed at the present time and is unlikely to be restored to competency in the foreseeable future." Id. at 1. Dr. Burton's report contained no discussion or findings concerning a risk assessment of Rendon-Romero's dangerousness under 18 U.S.C. § 4246. See id.

On July 1, 2024, the court denied Rendon-Romero's motion to dismiss the indictment [D.E. 73]. The court found that Rendon-Romero's seven-month pre-hospitalization delay, and the government's one-month delay in violation of the court's date certain order, did not violate Rendon-Romero's due process rights. See id. at 7–8. Alternatively, even if Rendon-Romero's due process rights were violated, the court held that dismissal of the indictment was not the proper remedy because the extra 31 days it took the BOP to admit Rendon-Romero roughly corresponded to a common final deadline set by courts when issuing a final warning to the government after a due process violation occurs. See id. at 10–11. The court also held that Rendon-Romero received the appropriate remedy in this case: admission to the competency restoration program to receive the treatment he needed. See id. at 11–12.

In its July 1, 2024 order, the court scheduled a competency hearing for July 10, 2024. See id. at 12. On July 2, 2024, Rendon-Romero moved to continue the competency hearing for two weeks [D.E. 74]. On the same day, the court granted Rendon-Romero's motion to continue and continued the competency hearing until July 24, 2024 [D.E. 75].

On July 10, 2024, the government moved for the court to order the BOP "to perform a risk assessment of the defendant . . . pursuant to 18 U.S.C. § 4246(a) and (b)." [D.E. 76] 1. On July

5

21, 2024, Rendon-Romero responded in opposition [D.E. 79]. On July 23, 2024, the day before the scheduled competency hearing, Rendon-Romero moved for release from custody to the supervision of his family [D.E. 80].

On July 24, 2024, the court held the scheduled competency hearing, discussed the uncontested findings of Dr. Burton, and heard argument from the parties concerning their respective motions [D.E. 81]. The parties and the court discussed whether the court could order the BOP to perform a risk assessment and the differences between Fourth Circuit and Eighth Circuit law governing section 4241 and section 4246 proceedings. See [D.E. 82] 3. The court ordered the government to respond in writing to Rendon-Romero's motion for release. See id. On July 31, 2024, the government responded in opposition to Rendon-Romero's motion for release, asked the court to find that the Rendon-Romero is now subject to the provisions of 18 U.S.C. § 4246, and moved to dismiss the indictment [D.E. 82, 83].

II.

Rendon-Romero opposes the government's motion for the court to order a risk assessment under 18 U.S.C. § 4246. See [D.E. 79]. Rendon-Romero argues that this court has no authority to order an examination under section 4246(b) because the proceedings for civil commitment under that statute must occur in the federal district of the defendant's confinement. See id. at 1–2. Thus, Rendon-Romero argues that this court lacks authority to sua sponte initiate civil commitment proceedings. See id. at 2. Furthermore, Rendon-Romero argues that section 4246 designates the facility director as the "bridging force" between criminal and civil commitment proceedings; therefore, the BOP should not require any court order to exercise that exclusive statutory responsibility. Id. at 2–4 (quotation omitted). In his motion for release from custody, Rendon-Romero argues that his valid custody under section 4241(d) ended on May 8, 2024. See [D.E. 80]

6

2. Rendon-Romero argues that once the court accepts the competency and restorability findings of Dr. Burton, the court must dismiss the criminal case against Rendon-Romero and no further grounds exist under either section 4241(d) or section 4246 to continue Rendon-Romero's custody. See id. At the July 24, 2024 competency hearing, counsel for Rendon-Romero explained that he filed the motion for release in part because future challenges to Rendon-Romero's potential commitment under section 4246 require him to challenge in the court in which his criminal case is pending the period of custody that immediately precedes potential civil commitment proceedings. See, e.g., United States v. Carrington, 91 F.4th 252, 259 (4th Cir. 2024); United States v. Ryan, 52 F.4th 719, 722–23 (8th Cir. 2022). Counsel for Rendon-Romero also suggested that the BOP should have completed any risk assessment for the purposes of filing a section 4246 certificate during Rendon-Romero's latest section 4241(d)(2)(A) hospitalization.

At the July 24, 2024 competency hearing, the government explained its rationale for filing the motion for the court to order a risk assessment. After receiving Dr. Burton's report, the government communicated with the BOP medical facility in Springfield to determine if the BOP had conducted or would conduct a section 4246 risk assessment. The government informed the court that based on the BOP's understanding of Eighth Circuit law governing section 4246 civil commitment proceedings, the medical facility in Springfield does not initiate section 4246 risk assessments until a court either (1) issues an order making findings on competency to proceed and restorability or (2) issues an order requesting a dangerousness assessment. Based on these representations from the BOP, the government filed its motion with this court seeking such an order.

On July 31, 2024, the government responded to Rendon-Romero's motion for release. See [D.E. 82]. The government argues that Rendon-Romero validly remains under the custody of the

Attorney General because section 4241(d) authorizes hospitalization for an additional reasonable period of time "until his mental condition is so improved that trial may proceed . . . or the pending charges against him are disposed of according to law; whichever is earlier." Id. at 2 (quotation omitted); see 18 U.S.C. § 4241(d). Furthermore, "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 . . . ." [D.E. 82] 2 (quotation omitted); see 18 U.S.C. § 4241(d). The government notes that the court has not yet ruled on Rendon-Romero's competency to proceed and that the court has not disposed of the pending charges against Rendon-Romero according to law. See [D.E. 82] 2–3. Thus, the government argues that the defendant remains under valid section 4241(d) custody, that Rendon-Romero's motion for release is premature, and that the court can enter the requested order. See id.

A.

The court considers the relationship between section 4241(d)'s procedures for competency determinations and section 4246's procedures for civil commitments. See, e.g., Carrington, 91 F.4th at 257; United States v. Timms, 664 F.3d 436, 453 n.14 (4th Cir. 2012). Under 18 U.S.C. § 4241(d), if following a competency hearing "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d).

> The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
> (2) for an additional reasonable period of time until—

8

> (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
> (B) the pending charges against him are disposed of according to law; whichever is earlier.

Id. Congress included no provision to extend the four-month section 4241(d)(1) hospitalization, but section 4241(d)(2) allows for an additional reasonable period of hospitalization if the court finds a substantial probability of competency restoration or until the pending charges are disposed of according to law. See, e.g., United States v. Magassouba, 544 F.3d 387, 405–06 (2d Cir. 2008). Subsections 4241(d)(1) and (d)(2), however, "simply establish the maximum periods of hospitalized evaluation and treatment authorized for determining a defendant's competence to stand trial, not the maximum period that the defendant may be held in the custody of the Attorney General." United States v. Curbow, 16 F.4th 92, 122 (4th Cir. 2021) (Traxler, J., concurring) (emphasis in original). Moreover, section 4241(d) "implicitly recognizes that hospitalization cannot occur instantaneously" and that a pre-hospitalization period before the four-month clock begins to run is permitted. United States v. Alhindi, 97 F.4th 814, 826 (11th Cir. 2024) (per curiam). Furthermore, "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248." 18 U.S.C. § 4241(d).

Section 4246 provides for civil commitment of certain mentally ill persons who are a danger to the community. If the "director of a facility in which a person is hospitalized certifies" that such person is "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available," then the director may seek his civil commitment by filing a certificate in the court for

the district where the person is confined. 18 U.S.C. § 4246(a); see Carrington, 91 F.4th at 258. The court that receives the certificate must hold a hearing to verify the director's finding. See 18 U.S.C. § 4246(a). In the meantime, the filing of the certificate immediately stays the person's release until the court completes section 4246 proceedings. See id.

Section 4246 only applies to someone (1) who is "in the custody of the Bureau of Prisons whose sentence is about to expire," (2) who "has been committed to the custody of the Attorney General pursuant to section 4241(d)," or (3) "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." Id. The subject of a civil-commitment certificate may challenge the certificate in the civil-commitment court on the grounds that section 4246 did not apply to him when the facility director filed the certificate. See Carrington, 91 F.4th at 258. If section 4246 does not apply to the person, the court must dismiss the certificate. See Curbow, 16 F.4th at 116.

This court is not the court in which Rendon-Romero's civil commitment proceedings can proceed. See 18 U.S.C. § 4246(a). Nonetheless, Fourth Circuit cases resolving challenges to section 4246 proceedings remain instructive for analyzing section 4241(d) and resolving the government's request for the BOP to conduct a risk assessment to initiate potential section 4246 proceedings. Notably, in United States v. Wayda, the Fourth Circuit identified three periods of time when the defendant was potentially under the custody of the Attorney General pursuant to section 4241(d). See United States v. Wayda, 966 F.3d 294, 298–303 (4th Cir. 2020); see also Curbow, 16 F.4th at 97–99 (reviewing Wayda). The district court in which the criminal case was pending ordered the first two periods of custody pursuant to sections 4241(d)(1) and 4241(d)(2)(A). See Curbow, 16 F.4th at 98; Wayda, 966 F.3d at 299. The Fourth Circuit identified a third period of custody between the district court's determination that the defendant was

10

unrestorable and the government's filing of the section 4248 certificate. See Curbow, 16 F.4th at 98; Wayda, 966 F.3d at 303. That third period of custody necessarily proceeded under section 4241(d)(2)(B), by which the defendant could be under the custody of the Attorney General "for an additional reasonable period of time until . . . the pending charges against him [were] disposed of according to law." Curbow, 16 F.4th at 98 (quotations omitted). The Fourth Circuit held that even if earlier lapses in the defendant's periods of commitment were excused, the section 4248 certificate was untimely if the period between the unrestorability determination and the certificate's filing was unreasonable. See Wayda, 966 F.3d at 303. In Wayda, the Fourth Circuit held that Wayda's third period of custody under section 4241(d), which lasted six months, was unreasonable because "[t]he Government did not provide an adequate explanation of any physical, behavioral, or administrative obstacles to [its] evaluation of [Wayda] or the filing of the [section] 4248 certification." Id. at 308. The Fourth Circuit observed that "[w]hen the government has in its custody an individual whose incapacity renders him unable to stand trial and therefore eventually subject either to possible release or civil commitment, we expect the government to strive to certify individuals in a time frame that eliminates or at least minimizes the time spend as an incompetent, unrestorable person waiting for a [section] 4248 determination." Id. (quotation omitted); see Timms, 664 F.3d at 453 n.14. "That reasonable period of time should not be so short as to not accord the government reasonable time to seek and file certification of a person pursuant to [sections] 4246 or 4248, but it should only be so long as to allow for reasonable explainable administrative delays in that certification process." Wayda, 966 F.3d at 308 (quotation omitted).

In Curbow, the Fourth Circuit applied Wayda to another transition between section 4241(d) custody and section 4246 civil commitment proceedings. See Curbow, 16 F.4th at 97–99. In Curbow, criminal charges were pending in Mississippi, and the district court in Mississippi initially

11

ordered an evaluation of the defendant's competency to stand trial under section 4241(b). See id. at 100. After finding the defendant incompetent to stand trial, the district court in Mississippi ordered the defendant committed to the custody of the Attorney General under section 4241(d)(1) for competency restoration treatment. See id. at 101. At the end of that four-month treatment period, BOP evaluators opined that the defendant required further treatment to be restored to competency but did not mention dangerousness. See id. The district court in Mississippi then ordered another period of custody under section 4241(d)(2) after finding that there remained a substantial probability that the defendant could be restored to competency in the foreseeable future. See id. On June 6, 2019, at the end of this second custody period, BOP evaluators opined that the defendant remained incompetent and that he would not likely be restored to competency in the foreseeable future. See id. "The evaluators requested 30 more days to assess Curbow and sought clarification as to the focus of their evaluation." Id. The same day, the district court in Mississippi entered an order under section 4241(d)(2)(B) granting a 30-day period of custody to further evaluate Curbow, and BOP evaluators understood that they were to assess both restorability and dangerousness. See id.; see also id. at 103 n.3.

On July 12, 2019, BOP evaluators at FMC Butner in the Eastern District of North Carolina produced a report opining that Curbow remained incompetent, that he was unlikely to be restored to competency in the foreseeable future, and that Curbow satisfied the definition of a dangerous person under section 4246. See id. at 102. On July 17, 2019, Curbow's Warden adopted the recommendation, completed a section 4246 certificate attesting to Curbow's dangerousness, and forwarded the certificate to the United States Attorney for the Eastern District of North Carolina. See id. Curbow's Warden sent the section 4246 certificate to that United States Attorney because Curbow was at FMC Butner in the Eastern District of North Carolina. On July 25, 2019, the United

12

States Attorney filed the certification to initiate section 4246 proceedings in the Eastern District of North Carolina. See id.

In Curbow, the defendant argued that it was unreasonable for the government to ask the district court in Mississippi for an additional 30-day period to consider dangerousness after the unrestorability determination, and that the 49-day period between the Mississippi court's unrestorability determination and the certificate filing in the Eastern District of North Carolina was unreasonable in light of the sixteen months the defendant spent in government custody. See id. at 105. The Fourth Circuit held that the section 4246 district court in the Eastern District of North Carolina did not err in concluding that Curbow's third period of section 4241(d) custody was reasonable under Wayda. See id. at 109. The Fourth Circuit affirmed the district court's findings that the government strived to certify the defendant in a timeframe that eliminated (or at least minimized) the time the defendant spent as an incompetent unrestorable person awaiting a section 4246 determination. See id. at 109–10. The Fourth Circuit noted that BOP evaluators progressed through the required layers of review in a timely fashion, and the time period that elapsed in the case allowed for administrative delays and was reasonable. See id. Furthermore, the Fourth Circuit rejected Curbow's argument that the BOP must complete section 4246 assessments during the four-month periods of section 4241(d)(1) or (d)(2)(A) custody. See id. at 111–12. The Fourth Circuit held that "precedent and the governing statutory framework require the Government to act with reasonable speed, and not in the quickest possible manner." Id. at 112; see Wayda, 966 F.3d at 308.

B.

As in Curbow, this court committed Rendon-Romero to the custody of the Attorney General for two periods of section 4241(d) custody for competency treatment and an assessment

13

of his likelihood to regain competency. See [D.E. 27]; [D.E. 71]; 18 U.S.C. § 4241(d)(1), (d)(2)(A). As in Curbow, at the end of his section 4241(d)(2)(A) hospitalization, BOP evaluators opined that Rendon-Romero was incompetent and unlikely to be restored to competency in the foreseeable future. See [D.E. 72]. As in Curbow, the forensic report detailing those findings did not include a dangerousness assessment. See id. As in Curbow, the government has requested a brief additional period of hospitalization for the BOP to assess Rendon-Romero's dangerousness. See [D.E. 76].

This court is not sua sponte initiating section 4246 proceedings. Rather, after making an unrestorability finding, the court is retaining Rendon-Romero in custody under section 4241(d)(2)(B) for a reasonable period of time to allow the Warden of the BOP medical facility in Springfield to conduct a dangerousness assessment. See Curbow, 16 F.4th at 99–113; Wayda, 966 F.3d at 308. Although this court will not preside over any potential section 4246 proceedings involving Rendon-Romero, the court finds that allowing a short period of section 4241(d)(2)(B) custody is reasonable. See, e.g., Curbow, 16 F.4th at 109–13; Wayda, 966 F.3d at 308.

As in Curbow, the government has "proffered evidence that [Rendon-Romero] was not previously evaluated for dangerousness and that the assessments during his prior confinement . . . were for mental competency and restorability." Curbow, 16 F.4th at 112; see also id. at 113 n.8. At the July 24, 2024 competency hearing, the government detailed its communications with the BOP facility inquiring why a section 4246 assessment had not already occurred. Cf. Curbow, 16 F.4th at 112. The government explained the administrative obstacles it faced, including that the BOP facility in Springfield typically waits for a court order making findings on competency and restorability before BOP evaluators transition to a risk assessment. This court promptly scheduled a competency hearing in Rendon-Romero's case after the BOP released its forensic report.

14

Moreover, the delays since the court first scheduled the competency hearing included Rendon-Romero's request for a two-week continuance and a short court-ordered continuance to allow the government to respond in writing to Rendon-Romero's motion for release. Accordingly, granting the government a short, reasonable period of time to conduct a risk assessment and seek a section 4246 certification does not violate the principle that section "4241 and [4246] proceedings should move forward with dispatch and not further exacerbate the grim delay in achieving the resolution of these matters." Wayda, 966 F.3d at 308 (quotation omitted). Furthermore, the procedural history in Wayda and Curbow demonstrate that a district court where a criminal case is pending may allow a short period of section 4241(d)(2)(B) custody after an unrestorability finding to allow the BOP to conduct a section 4246 risk assessment. Such an order does not constitute the sua sponte initiation of section 4246 proceedings, but rather is part of the interplay between sections 4241 and 4246.[1]

The court accepts Dr. Burton's uncontested findings discussed in her report and at the July 24, 2024 competency hearing. The court finds that Rendon-Romero is incompetent to proceed and unlikely to be restored to competency in the foreseeable future. As in Curbow, the court grants the government's pending motion for a risk assessment, not under section 4246, but under section 4241(d)(2)(B) and allows the BOP medical facility in Springfield 30 days to conduct an assessment of Rendon-Romero's dangerousness. See Curbow, 16 F.4th at 101.[2] At the end of this 30-day

---

[1] The Ninth Circuit has similarly permitted a district court to order that a defendant return to a BOP medical facility for a section 4246 dangerousness assessment after finding the defendant incompetent to proceed and unrestorable and staying its order of dismissal pending the determination regarding dangerousness. See United States v. Godinez-Ortiz, 563 F.3d 1022, 1025–26, 1031–32 (9th Cir. 2009).

[2] There is no legal effect to this court stating that Rendon-Romero is "now subject to [the] provisions of 18 U.S.C. § 4246." [D.E. 82] 3; see Carrington, 91 F.4th at 269–70. That fact is simply a consequence of this court's unrestorability finding. See Carrington, 91 F.4th at 270.

15

period, the court anticipates ruling on the government's motion to dismiss the indictment and disposing of Rendon-Romero's criminal case according to law. Cf. Wayda, 966 F.3d at 305 & n.8. The court does not make any prospective findings on the reasonableness of any further delays in the government seeking a section 4246 certificate.

C.

As for Rendon-Romero's motion for release, the court determines that the motion is premature. The court has now made a finding on Rendon-Romero's incompetency and unrestorability. As discussed, Rendon-Romero remains validly under section 4241(d) custody until his pending charges are disposed of according to law. The government is allowed a reasonable period of time after a finding of incompetence and unrestorability to seek and file a certificate under section 4246. See Wayda, 966 F.3d at 308. Moreover, at the July 24, 2024 competency hearing, defense counsel's plan for releasing Rendon-Romero to the supervision of his family contained no detail on how his family could meet Rendon-Romero's medical needs as currently provided for at the BOP medical facility in Springfield or how his release would comport with the ICE detainer.

III.

In sum, the court GRANTS the government's motion for a risk assessment [D.E. 76], allows the BOP 30 days to conduct a risk assessment of the defendant, and DENIES WITHOUT PREJUDICE as premature defendant's motion for release [D.E. 80].

SO ORDERED. This _6_ day of August, 2024.

/s/ J. Dever
JAMES C. DEVER III
United States District Judge